In the Matter of the Application of WILLIAM L. LAZENBY, Appellant, for a Peremptory Writ of Mandamus against the BOARD OF POLICE OF THE CITY OF ELMIRA, NEW YORK, Respondent.

*Removal of a roundsman from the Elmira police — it may be done for economic reasons — loss of his pension — effect of the abolition of the office.*

The police board of the city of Elmira, in the interests of economy and for the purpose of keeping within the annual appropriation for the police department, may abolish the position of day roundsman and discharge the incumbent thereof from the police force, and is not obliged to make the appropriation sufficient to pay all the members of the police force, by reducing salaries, where it does not appear that the salaries paid are excessive.

Section 183 of the city charter (Laws of 1894, chap. 615), providing, "No member of the regular police force shall be removed therefrom except by the concurring vote of at least four members of the board of police at a stated or regular meeting of said board, and except for inefficiency, misconduct or neglect of duty, and after reasonable notice of the charges against him and an opportunity to be heard in his defense before said board," has no application to a removal for such a cause.

The roundsman has no such vested right in a police pension fund, which has been created by the Legislature and not by his voluntary contribution, as will prevent his discharge when necessary for economic reasons.

*Semble,* that the mere abolition of the office of roundsman would *not,* of itself, operate to discharge the roundsman from the police force but would only reduce him to the rank of a regular police officer.

APPEAL by the petitioner, William L. Lazenby, from an order of the Supreme Court, made at the Broome Special Term and entered in the office of the clerk of the county of Chemung on the 9th day of August, 1902, denying the petitioner's application for a peremptory writ of mandamus.

The application by the appellant Lazenby was for a peremptory writ of mandamus to compel his restoration to the office of a member of the regular police force of the city of Elmira. Prior to the 11th day of June, 1902, the appellant had been a member of said police force. Under the rules of the department the position of roundsman was created, the duties of which office are to make periodical visits to see that the policemen in different parts of the city are properly performing their duties. There were two roundsmen, one of them connected with the day force and the other with the night force,

these two men exchanging duties after certain periods. Upon the 11th day of June, 1902, the board of police, which, under the charter of the city of Elmira (Laws of 1894, chap. 615, § 177), had control of the police force of the city, passed a resolution abolishing the office of roundsman in connection with the day force, and this appellant, who was then acting as such roundsman, was discharged at the close of his duties on June 15, 1902. The resolution recited that it was for the purpose of reducing expenses. Section 183 of the city charter provides: "No member of the regular police force shall be removed therefrom except by the concurring vote of at least four members of the board of police at a stated or regular meeting of said board, and except for inefficiency, misconduct or neglect of duty, and after reasonable notice of the charges against him and an opportunity to be heard in his defense before said board." Application for a mandamus to compel relator's reinstatement was denied by the Special Term, and from the order denying such application this appeal has been taken. Further facts appear in the opinion.

*Roswell R. Moss*, for the appellant.

*Charles B. Swartwood*, for the respondent.

SMITH, J. :

The appellant challenges the attempted removal, *first*, as being ineffective to remove him from the regular police force because the office of roundsman simply is abolished; and *secondly*, as being ineffective to remove him because of his right to hold said position until discharged for inefficiency or misconduct and after a hearing. We have no doubt that the action of the police board operated to discharge the relator from the police force if such action was authorized. The roundsman was a member of the regular force with certain specified duties. The abolition of the office of roundsman would not of itself operate to discharge the relator. Such action only would reduce him to the rank of a regular police officer. In addition to that, however, by the resolution he was not reduced to the rank of a police officer, but was in terms discharged. By this language the intent of the board was, I think, clearly expressed to discharge the relator from the regular police force.

The question remains as to the authority of the board to abolish the office and discharge the relator.   In *People ex rel. Corrigan* v. *Mayor* (149 N. Y. 215) it was held that by virtue of the statutes "the authorities of the city of Brooklyn have no right to remove an honorably discharged Union soldier of the late war from an appointive salaried position, such as that of keeper or superintendent of the Truant Home, except for good cause shown on hearing had; but if such a position is abolished in good faith and for sufficient reason, as, *e. g.*, on the ground of economy, this statutory limitation has no application." (See, also, *Phillips* v. *Mayor*, 88 N. Y. 245; *Lethbridge* v. *Mayor*, 133 id. 232.)   The police force of the city of Elmira can only be paid by appropriations made by the common council of the city.   For the year in which the discharge was attempted the appropriation for the police force was $29,000.   To pay the police force as it stood at the time of the adoption of this resolution the sum of upwards of $33,000 was required.   It became necessary to reduce that force.   That reduction was made by reducing certain salaries of members of the force, and also by discharging the driver of the patrol wagon and two members of the regular police force in addition to the relator Lazenby.   The good faith of the police board in discharging Lazenby for purposes of economy is well sustained in the record. It is claimed by the relator that the salaries could have been reduced and thereby sufficient funds found for his payment.   It does not appear, however, that the salaries were any more than a fair compensation for the labor done, and it cannot be assumed that the Legislature intended to give the relator a life appointment if it were necessary to secure the same by reducing the salaries below a fair compensation for the services done, and thereby necessitating the employment of inefficient officers.   With a right in the board to reduce the force for motives of economy, the right to discharge the relator can hardly be questioned.   He was in no way preferred as a volunteer fireman or as a veteran. The relator's claim that he had a vested right in the police pension fund which would prevent his discharge is untenable.   That fund was not in any way created by his voluntary contribution, and by its creation the Legislature could not have intended to deprive a municipality of its power to discharge a member of the force when

necessary for economic reasons. The right to discharge a municipal servant for such reason is so essential to good government and wise administration that the court will not deny it to municipal authorities except under clear mandate of the statute. We see no reason for disturbing the conclusion reached by the Special Term.

All concurred.

Order affirmed, with ten dollars costs and disbursements.