# Commonwealth of Pennsylvania ex rel. Vesneski, Appellant, *v.* Reid et al.

*Boroughs—Powers of borough council—Removal of burgess from office—General Borough Act May 14, 1915, P. L. 312.*

1. Under the General Borough Act of May 14, 1915, P. L. 312, the borough council does not "exercise all the corporate powers and functions" of the borough.

2. Neither a borough nor its council have any powers except such as are expressly conferred, or are to be implied from those which are so conferred.

3. There is no power in a borough, or a borough council, to remove a burgess from office.

*Constitutional law—Departments of government—Legislative department—Executive department—Powers over each other.*

4. Under our system the legislative and executive departments are coördinate branches of government and neither has any power over the other, save as given by the Constitution or a constitutional statute.

*Public officers—Constitutional officers—Legislative officers—Removal—Causes—Procedure.*

5. A constitutional officer can only be removed in the manner and for the causes prescribed by the Constitution; and a legislative officer only in the manner and for the causes provided by the Constitution or a constitutional statute.

*Public officers—Municipal officers—Removal — Procedure—Article VI, Section 4.* ·

6. There being no legislative provision on the subject, municipal officers can be removed only under the circumstances prescribed by Article VI, Section 4, of the Constitution of the State.

7. The dictum in Evans v. Phila. Club, 50 Pa. 107, 117, that the power of amotion for adequate cause is an inherent incident of municipal corporations, is not the law of this State. Such power

does not exist save as it is expressly or impliedly given by the constitution or a constitutional statute.

Argued May 20, 1919.   Appeal, No. 7, Jan. T., 1920, by plaintiff, from order of C. P. Lackawanna Co., Oct. T., 1918, No. 1011, overruling plaintiff's demurrer to respondents' return to a writ of mandamus in the case of Commonwealth ex rel. Louis D. Vesneski v. James Reid et al., Members of Council of Dickson City Borough. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ.   Reversed.

Petition for mandamus against members of borough council commanding defendants to desist from interfering with the relator in the exercise of his rights and functions as burgess.   Before EDWARDS, P. J.

The respondents filed a return in which they held that the relator had been tried and adjudged guilty of neglect of duty, habitual drunkenness, and bribery, and had been removed from the office of burgess, to which the relator demurred.   The court overruled the demurrer. Plaintiff appealed.

*Errors assigned* were overruling demurrer to respondents' return and the judgment of the court.

*David J. Reedy,* with him *James P. Wilson* and *Harry Needle,* for appellant.—The burgess was an officer within the meaning of Article VI, Section 4 of the Constitution: Houseman v. Com., 100 Pa. 222.

We concede the legislature might give the power to council to remove the burgess or any elective officer, but not having done it, the council couldn't abolish the office and cannot remove the person holding the office.

Proceedings for removal of an officer are judicial in their nature and must be had before tribunals clothed with judicial powers: Mechem on Public Officers, 455; Hedges v. Comm'rs of Lewis & Clarke Co. (Mont.), 1 Pac. 748; Page v. Hardin, 47 Ky. 672.

*M. J. Martin,* with him *Ralph W. Rymer,* for appellees. —A power of amotion is incident to the corporation. It is as necessary to good order and government of corporate bodies that there should be such a power, as the power to make by-laws. And where the offense is merely against his duty as a corporator he can only be tried for it by the corporation. Unless this power is incident, franchises or offices might be forfeited for officers, and yet there would be no means to carry this law into execution. Suppose a by-law made to give power of amotion for just cause, such a by-law would be good. If so, a corporation, by virtue of an incident power, may raise to themselves authority to remove for just cause, though not expressly given by charter or prescription: Lord Bruce's Case, 2 Strange 819; Rex v. Richardson, 1 Burrows 517.

The common council of municipal corporations possess the incidental power to expel its members, and, for cause, to remove or provide by ordinance for the removal for just cause of corporate officers, whether elected by it or by the people: Richards v. Clarksburg, 30 W. Va. 491, 4 S. E. 774; Hayden v. Memphis, 100 Tenn. 582, 47 S. W. 182-183.

OPINION BY MR. JUSTICE SIMPSON, June 21, 1919:

At the election held November 6, 1917, Louis D. Vesneski was elected burgess of Dickson City Borough for a term of four years beginning the first Monday of January, 1918, at which date he duly qualified and entered on the duties of his office. Written charges having been preferred against him, alleging neglect of duty, habitual drunkenness and bribery, the borough council adopted a resolution requiring him to show cause why he should not be removed from his office. He filed an answer denying the charges and also the jurisdiction of the council, but refused to appear personally. It tried him, adjudged him guilty, and by resolution declared "the said Louis D. Vesneski is now removed from the office and duties of the office of burgess of Dickson City Borough, Pennsyl-

vania"; and thereafter refused to permit him to fill the office. An information was filed in the name of the Commonwealth, at his relation, against the members of the borough council, praying a writ of peremptory mandamus "commanding the defendants......and each of them to desist and refrain from interfering in any manner whatever with the relator in the exercise of his rights and the performance of his duties as burgess of said borough." An alternative writ was awarded, respondents made return thereto, averring the truth of the charges and the foregoing proceedings before the borough council, and prayed a dismissal of the writ. Relator demurred to the return, the court below decided there was no constitutional or statutory authority to remove a burgess in the way attempted, but that such right was incident to the corporation itself, and could be exercised by the borough council, because it was not prohibited from so doing; and hence entered judgment for respondents.

This conclusion was based upon early English cases, which have been followed by some of the courts of this country,—generally, if not always, by way of obiter dicta, —and has been approved in various text-books, as applicable in states where the common council "exercises all the corporate powers and functions." With us, however, even if we assume the existence of such incidental right in the corporation itself, it would not aid appellees, for a borough council does not "exercise all the corporate powers and functions" of the borough.

By Chapter 5, Article I, Section 2 of the General Borough Act of May 14, 1915, P. L. 312, it is provided "the powers of the borough shall be vested in the corporate officers" included among which, under chapter 8, article I, are also the burgess, the high constable and the auditors or controller, and there is nothing elsewhere in the statute qualifying that enactment, or showing an intention to vest the corporate powers in the common council alone. Appellees' only other suggestion that a power of

amotion may be exercised by the council, is founded upon chapter 7, article I, section 6, clause III, which provides: "It shall be the duty of the council......to enact, revise, repeal and amend such laws, rules, regulations and ordinances, not inconsistent with the laws of the Commonwealth, as it shall deem beneficial to the borough, and to provide for the enforcement of the same." This, however, refers only to those "ordinances and resolutions" which, by chapter 7, article I, section 7, are to be presented to the burgess for approval or disapproval, and, if vetoed, will not become effective unless again passed by a vote of "two-thirds of all the members elected to said council"; and are the "by-laws, rules, regulations and ordinances" which by chapter 7, article II, section 11, clause III, the burgess is required "to sign...... after they shall have been correctly transcribed by the secretary"; in other words the clause relied on by appellees refers only to the legislative "duty of the council," and hence it also fails to sustain the judgment below.

Nor is there any such incidental right in the borough itself. With us municipalities have no powers save such as are expressly conferred by statute, or are reasonably to be implied from the powers actually granted. In Wimer v. Worth Township, 104 Pa. 317, 320, we said: "An act done by a municipal corporation in an attempt to exercise power not possessed by it, is void. There is no distinction in reason between the cases of entire absence of enactment conferring power, and a prohibition of its exercise beyond a certain limit. In one case it is not granted, in the other it is expressly withheld, and in each there is a total absence of authority." In Commonwealth v. Moir, 199 Pa. 534, 541, we said: "Municipalities are agents of the State, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed and the extent of their powers determined by the legislature, and subject to change, repeal, or total abolition at its will." In McCormick v. Hanover Township, 246

Pa. 169, 172, we said: "It is an undisputed rule that municipalities, no matter how high their grade, can exercise no powers save those for which there is express statutory authority, or such as are necessary to the exercise of their corporate powers, and are therefore implied." Hence, as appellees' claim of right to remove the burgess is dependent upon an inference of the existence thereof in the borough itself, and admittedly none such has been conferred by constitution or statute, for this reason also the judgment below is erroneous.

There is, moreover, a fundamental reason antagonistic to the view taken by the court below. When the Constitution of the United States, the Constitution of this State, and the acts of assembly relative to municipalities, provided that the executive and legislative departments should be coördinate and independent branches of government, each elected by and answerable to the people, and each bound by the provisions of the Constitution and the laws passed in pursuance thereof, all possibility of incidental powers existing in one department over the other, as distinguished from such as are expressed in or reasonably to be implied from such constitution or laws, at once necessarily ended, even if it properly existed under the English system of government. If this were not so, one of the coördinate branches of government could transcend the powers given to it by the instrument which created them both, the other would suffer an equivalent loss of power, and, instead of the two being coördinate, one would be dominant and the other servient to the extent of the alleged incidental power. As it is, the people are entitled to the services of the officer during the entire term for which they elected him (Lloyd v. Smith, 176 Pa. 213), unless he be removed in the way prescribed by the Constitution, if the officer is a constitutional officer (Bowman's Case, 225 Pa. 364), or by the legislature or under its authority in the manner provided by Constitution or statute, if the officer is not a constitutional officer: Com. v. Weir, 165 Pa. 284, 288. If no

authority be given to other agencies, the legislature alone can act, subject to constitutional limitations, if any, under its supreme power to pass laws not prohibited: Likins's Petition (No. 1), 223 Pa. 456.

A recognition of this fundamental distinction between the two systems of government, explains the fact that when this court (3 Binney 533 et seq.), in compliance with the requirements of the Act of April 7, 1807, P. L. 163, reported to the legislature the various British statutes in force in this Commonwealth, none of those so reported had any relation to the political subdivisions of the State or to any of the officers thereof; and this applies also to all the other British statutes, from time to time held applicable notwithstanding the changed conditions arising out of our independence. And it explains also why a legislative power of amotion of the executive, though it may be incident in the English system of government, has never found place in this Commonwealth, save in the manner and to the extent constitutionally provided.

The municipalities of the State are not remediless, however, if important reasons exist why their executives should be removed, for by Article VI, Section 4 of the Constitution, it is provided as follows: "All officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime. Appointed officers, other than judges of the courts of record and the Superintendent of Public Instruction, may be removed at the pleasure of the power by which they shall have been appointed. All officers elected by the people, except Governor, Lieutenant-Governor, members of the General Assembly, and judges of the courts of record learned in the law, shall be removed by the Governor for reasonable cause, after due notice and full hearing, on the address of two-thirds of the Senate." That section applies to municipal officers: Houseman v. Com., 100 Pa. 222, 229; Richie v. Phila., 225 Pa. 511,

514; and the municipalities of the State must be satisfied with the methods and causes of amotion therein provided, until and unless the legislature, in its wisdom, shall add thereto.

The only case in this State which seems to antagonize the views above expressed, is Evans v. Phila. Club, 50 Pa. 107, 117, where it is said: "The power of amotion for adequate cause, is an inherent incident of all corporations, whether municipal or private, except, perhaps, such as are literary or eleemosynary." Inasmuch, however, as the question then before the court related solely to the expulsion of a member of a private corporation, the statement is obiter dictum, so far as it relates to the amotion of officers of municipal corporations; and as the decision at nisi prius was affirmed by an equally divided court, in any event it "is not a decree or judgment of this court, in support of which the rule of stare decisis can be successfully invoked": Griel's Est., 171 Pa. 412, 416.

The judgment of the court below is reversed, and the record is remitted to the court below with directions to enter judgment for plaintiffs and to issue a writ of peremptory mandamus as prayed for.